VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 59-8-20 Vtec



| | |
|---|---|
| In re: Amaryah Pendlebury for The Natural Child School, LLC CU | **DECISION ON THE MERITS** |

In this on-the-record proceeding, Emma Jones Higley (Appellant) appeals a decision by the Town of Brattleboro Development Review Board (the DRB) granting an application for conditional use and site plan approval to Amaryah Pendlebury (Applicant) for The Natural Child School, LLC. Applicant seeks approval to operate a residential child daycare center on her property out of her existing single-family home, proposing to increase the number of children attending The Natural Child School beyond that allowed by 24 V.S.A. 4412(5). Appellant objects to the DRB's approval, contending that the use will cause issues stemming from increased traffic along the private road used to access Applicant's property.

Applicant is represented by Attorney Lawrence G. Slason and Appellant is represented by Attorney George T. McNaughton. The Town of Brattleboro is represented by Attorney Robert M. Fisher.

### Background

Applicant owns and operates The Natural Child School, LLC, a childcare program run out of a converted two-car garage building attached to the single-family home in which she resides. See Applicant's Printed Case at PC 3 (Town of Brattleboro Zoning Permit issued May 16, 2019, authorizing conversion of attached garage for daycare use). Applicant owns the approximately 1.99-acre property located at 26 Fort Dummer Heights (the Property) on which her residence and The Natural Child School are situated. Applicant has access to the Property along Fort Dummer

1

Heights, which is a private easement that also serves Appellant, another residence beyond the Property, and undeveloped lots uphill from the Property. Fort Dummer Heights is a narrow, gravel road with a wetland area on one side.

Appellant resides at 9 Fort Dummer Heights, on the corner of Old Guilford Road and Fort Dummer Heights. Fort Dummer Heights travels past Appellant's residence before reaching the Property, so families dropping children off at The Natural Child School drive past Appellant's house on their way to and from the Property.

The Property is located in a Rural Residential District for zoning purposes, and the Brattleboro Land Use Regulations (Brattleboro Regulations) classify child daycare as a conditional use in a Rural Residential District. Brattleboro Regulations Figure 2-22. Prior to the application and the DRB's subsequent approval, Applicant operated The Natural Child School from her residence without conditional use approval as a statutorily permitted residential use under 24 V.S.A. § 4412(5), which covers family childcare facilities with up to six full-time children and four part-time children. Applicant has admitted, however, that at some points the number of children attending The Natural Child School has exceeded the number authorized by § 4412.

In the June 17, 2020 public hearing, Applicant characterized her proposal as a request for authorization to increase the number of children attending The Natural Child School to eleven full-time children, beyond the limit for a permitted use under 24 V.S.A. § 4412(5).[1] The request for eleven children conforms with Applicant's claim in her application that the waste-water system has been approved for a total of thirteen people (including two staff, excluding Applicant).

Along with increasing the roster at the daycare to eleven, Applicant proposes to pave the section of Fort Dummer Heights that provides access to the Property, create two on-site parking spaces for staff, and expand the outdoor play-yard fencing behind the residence. Applicant intends to keep the width of the paved section of Fort Dummer Heights as small as possible to reduce impact to the wetland. The proposal does not involve any new structures or changes to

[1] Applicant originally proposed an increase to twelve children in her application but amended the proposal to eleven full-time children in the June 17, 2020 public hearing. The DRB's factual findings concern a proposal for an increase of up to eleven children though its final decision approves up to twelve.

2

existing structures beyond the addition of the fence around the play area and the unpaved additional parking spaces.

The DRB took evidence and heard testimony on the application in public hearings held on June 17, 2020 and June 24, 2020. The hearings were conducted on an online video-conferencing platform. Appellant and Attorney Andrew Marchev participated in the June 17, 2020 public hearing and expressed concerns related to traffic generated by the childcare use of the Property. Appellant submitted testimony and video evidence about the number of car trips along Fort Dummer Heights and the impacts from those trips. This evidence was collected during the week of March 2, 2020 – March 6, 2020 as a representative sample. Applicant testified in support of her application and responded to Appellant's concerns in the June 17, 2020 hearing.

The DRB issued its written Findings of Fact, Conclusions of Law, and Decision approving the application with conditions on July 17, 2020. The DRB conditioned the approval on the Applicant's ability to pave the lower segment of Fort Dummer Heights, acknowledging the open question of her legal authority to do so, as well as on the receipt of a Certificate of Compliance from the Brattleboro Zoning Administrator and any required State permits.

The Town's record on appeal includes video recordings of the June 17 and June 24, 2020 hearings, along with the video evidence entered into the record by Attorney Marchev on behalf of the Appellant. There is no written transcript of the hearings because the Court granted Appellant's request to file electronic recordings in a September 2, 2020 entry order.[2]

As a result of issues related to notice for the June 24, 2020 hearing, the parties stipulate to excluding any evidence received by the DRB after June 17, 2020. The Court approved the stipulation on December 30, 2020. Consequently, in considering the merits of this on-the-record appeal, the Court does not review the record or recording of the June 24, 2020 DRB hearing.

---

[2] This is one reason for the delay in rendering this decision. It takes the Court considerably more time to review electronic recordings as compared to reviewing a transcript.

**Standard of Review**

In an on-the-record appeal pursuant to V.R.E.C.P 5(h), the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). Particularly in this case, the municipal record is limited to that made before the DRB prior to the close of the June 17, 2020 hearing. We do not take new evidence or make our own factual determinations, instead reviewing whether the DRB's findings of fact "explicitly and concisely restate the underlying facts that support the decision" and are "based exclusively on evidence of the record." 24 V.S.A. § 1209(b).

The Court will affirm factual findings that are supported by substantial evidence in the record below. In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 586. In examining whether there is substantial evidence in the record, the Court does not assess the credibility of witness testimony or reweigh conflicting evidence. Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpub. mem.). The inquiry is whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

The DRB's conclusions of law must in turn be supported by the findings of fact. 24 V.S.A. § 1209(c). The Court reviews the DRB's legal conclusions without deference unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7. Additionally, our review is limited to those issues raised by an appellant's Statement of Questions. V.R.E.C.P. 5(f).

With these standards in mind, we conduct our review of the legal issues preserved by the Appellant's Statement of Questions.

**Discussion**

Appellant raises eleven questions in her Statement of Questions, though Question 11 is no longer before the Court. Question 11 concerned the record before the Court on appeal, asking

4

whether the DRB appropriately reopened the matter of this application for additional evidence at the June 24, 2020 hearing. Following briefing on the issue, the parties stipulated to limit the record on appeal to all evidence, documents, and testimony before the DRB prior to the close of the hearing on June 17, 2020. Thus, testimony received during the second hearing on June 24, 2020 along with any other evidence submitted after June 17, 2020 is excluded. The Court approved the Stipulation to Limit on the Record Review on December 30, 2020.

Appellant's Question 10 asks generally whether the DRB's findings of fact conformed with the evidence. This Question is intrinsic to each of the more specific Questions and is considered as part of the Court's on-the-record review. Question 10 is therefore duplicative of the more specific Questions and consequently not separately analyzed.

Appellant's remaining Questions concern two main issues: impacts from increased traffic on Fort Dummer Heights and potential impacts to a wetland adjacent to Fort Dummer Heights. In her brief, Appellant groups Questions 1 – 6, 8 and 9 together under the traffic issue and Question 7 under wetlands. All questions consider whether the proposal conforms to the approval standards in the Brattleboro Regulations for site plan and conditional use applications. Brattleboro Regulations § 434.D(3) and § 435.D.

*Traffic (Questions 1 – 6, 8 and 9)*

Appellant's primary argument on appeal is that Applicant's proposal to increase the number of children attending The Natural Child School will increase the amount of traffic on Fort Dummer Heights, resulting in significant impacts that the DRB did not appropriately consider. The impacts Appellant claims she personally experiences regard noise, dust, and interference with ingress and egress from cars passing her residence as they travel to and from the Property on Fort Dummer Heights.

Appellant's traffic questions can be summarized as follows: whether the evidence supports the DRB's calculation of the amount of new impact from the proposed use, and whether the evidence supports the DRB's determination that the proposed use will not exceed the capacity of the site and right-of-way, create unsafe conditions for people using the road and for

5

emergency vehicles, and unduly impact the Town's transportation infrastructure, the quality of life or natural environment in the area, and the character of the area.

The DRB frames Applicant's proposed use as an increase from six full-time and four part-time children to eleven full-time children because of state and local regulation around childcare. Under 24 V.S.A. § 4412(5), a "family child care home or facility" such as that operated by Applicant out of her single-family residence "serving no more than six full-time children and four part-time children . . . shall be considered to constitute a permitted use of property" subject only to the possible requirement of site plan approval under local zoning requirements. 24 V.S.A. § 4412(5). See also, Brattleboro Regulations § 117.A ("The Administrative Officer must issue a zoning permit for a family child care home that meets all of the following . . ." including that it "serves no more than 6 full-time and 4 part-time children in accordance with the statute"). Beyond a capacity of six full-time and four part-time students, however, the use of property may, "at the discretion of the municipality, be subject to all applicable municipal bylaws." 24 V.S.A. § 4412(5). As the Brattleboro Regulations classify "child day care" as a conditional use in the Rural Residential zoning district, Figure 2-22, Applicant requires conditional use approval in order to increase the class size at The Natural Child School to eleven full-time children.

In Question 9, Appellant asks whether the DRB erred in calculating the amount of impact from the proposed childcare project by recognizing and considering unlawful pre-permit traffic on Fort Dummer Heights in comparison to traffic generated by only the eleventh child. The DRB found that existing pre-permit traffic volume typically ranged from 60 to 80 one-way car trips on Fort Dummer Heights per day, and that approximately four trips per day could be attributed to each child attending Applicant's childcare center. Finding 12(n). Concluding from these findings that the proposed use amounted to an increase of one child (from the total of ten allowed under § 4412(5) to eleven children in attendance) or approximately four new trips per day on Fort Dummer Heights, the DRB calculated the impact of the proposed use by adding the four new trips to the estimated existing 60 to 80 daily trip range. See Finding 12(c), (n). To the extent that the DRB evaluated the proposal solely as an increase in approximately four new one-way car trips per day on Fort Dummer Heights, and to the extent that the DRB compared the four new trips to

6

existing traffic volumes, estimated to be between 60 to 80 trips per day, the Court agrees that the DRB was in error. As explained below, however, the error does not require remand.

The error is not with the DRB's factual findings but with its legal analysis of them. Evidence in the record supports the range of existing traffic levels and approximate number of trips per day per child attending childcare on the Property. These findings are supported by evidence Appellant collected between March 2, 2020 and March 6, 2020 to estimate the traffic passing her property on Fort Dummer Heights. Using a video system to record and count the cars passing in both directions, Appellant counted between 59 and 81 one-way car trips on Fort Dummer Heights each day. Recording of June 17, 2020 hearing at 0:59:30 (hereafter Recording).[3] Applicant also confirmed the 60 to 80 range as typical in response to questions from a DRB member, clarifying that the range represents the total amount of traffic, not just childcare-related traffic, and counts one-way not round-trips past Appellant's house, with four trips per day attributed to each child (two trips for drop-off in the morning and two for pick-up in the evening). Recording at 0:19:40. Applicant's admission that The Natural Child School was providing care for more children than were authorized to attend shows that the DRB's traffic findings were indicative of the proposed childcare use, and somewhat conservatively high.[4] Consequently, the DRB's finding of a total of 60 to 80 one-way daily vehicle trips on Fort Dummer Heights encompasses the number of trips to be generated by the proposed childcare use, with 60 one-way trips being from the childcare use.

In summary, the DRB erred in its legal analysis that it could calculate the impact of Applicant's proposal for eleven students by adding number of new trips generated by only the eleventh student. The DRB's facts relating to traffic trips, however, are supported by the underlying evidence. If each student generates approximately four trips, then the traffic volume generated by pick-ups and drop-offs for eleven children will be lower than that generated by

---

[3] In the absence of a written transcript of the June 17, 2020 hearing the Court cites to the approximate location of the relevant discussion or evidence in the video-recording of the hearing. The timestamp refers to the time remaining on the recording, not the time that has elapsed.

[4] Appellant's evidence suggests as many as twelve or thirteen children.

7

twelve or thirteen children, meaning the proposed use will likely result in less traffic trips than the existing 60 trips per day.

The proposed project's increase beyond the maximum number of statutorily permitted children requires conditional use review of the impact from the proposed childcare use of the Property as a whole, meaning the impact of all eleven children. Thus, the Court will use the conservative estimation of 60 vehicle trips per day in reviewing the remaining Questions.

Appellant asks in Questions 2 and 3 whether the evidence substantiates that the proposed use will not exceed the capability of the site and Fort Dummer Heights, and will not have an undue impact on the Town's transportation infrastructure. Appellant cites to Criteria 3 and 4 from Figure 4-3 of the Brattleboro Regulations in reference to these questions. Figure 4-3 lists all of the criteria which site plan and conditional use applications must meet before the DRB can approve them in accordance with Sections 434 and 435 of the Brattleboro Regulations.

As for the capability of the site, the DRB found that the main limitation on the site is the wastewater system, which is approved for a total of thirteen people not including Applicant. Finding 12(c). The proposal for eleven children and two staff members consequently does not exceed the thirteen-person limit. Recording at 1:15:15 (Applicant testimony that there would be two staff members associated with the childcare center commuting by vehicle and parking on-site). The Site Plan shows sufficient space for the expanded play area and two additional on-site parking spaces for staff. Applicant is not proposing changes to the existing landscaping, structures, or anything else that would otherwise raise concerns about the appropriateness of the site for eleven children.

The evidence also supports the DRB's finding that the proposed use will not exceed the capability of Fort Dummer Heights and will not result in an undue adverse impact on Town infrastructure. The DRB found that 60 to 80 trips per day is a low traffic volume, and that the impacts from the traffic on other residences can be mitigated by paving the lower section of Fort Dummer Heights that stretches between the intersection with Old Guilford Road and the Property. Findings 12(c), (d). The DRB's finding of a low traffic volume on Fort Dummer Heights is supported by Applicant's testimony that the childcare use of the road is staggered, with parents

8

dropping off and picking up their children at different times. Recording at 1:18:00 (explaining that generally only two parents pull up to the childcare center at a time but there is room for more with four existing parking spaces, and never had an issue with parents exiting or backing out of the driveway). Appellant also admitted that while she frequently saw two cars traveling on Fort Dummer Heights at the same time, it was not as common to see four cars at the same time. Recording at 0:53:40. While the video evidence that Appellant submitted to the DRB does show instances of multiple cars attempting to enter or exit the childcare center at once, the suggested congestion only exists for a matter of seconds. A parent of a child at The Natural Child School testified at the June 17th hearing that she has not seen any bottlenecking or other issues with traffic on Fort Dummer Heights. Recording at 0:08:08. Further, paving the lower section of Fort Dummer Heights will serve to mitigate the impacts of the traffic by reducing the noise and dust that Appellant currently experiences as cars pass her house on the existing gravel surface. Recording at 0:23:37, 0:14:23 (testimony from Applicant and Zoning Administrator Brian Bannon on benefits of paving).

Finally, the evidence provides little reason to be concerned about the impact of the proposed use on the Town's infrastructure. Fort Dummer Heights is a private road, and its only intersection with a public road (Old Guilford Road) will be paved, improving the intersection's ability to handle the trips generated by the proposed project. The Site Plan shows that Appellant's property boarders both Old Guilford Road and Fort Dummer Heights, but she did not provide a reason to be concerned with the impact of the existing traffic on Old Guilford Road. As explained in response to Question 9, the existing childcare use has been accommodating higher numbers of children than the eleven requested in this proposal. The proposed childcare use will not increase the volume of traffic presently and successfully travelling along the public roads or using the intersection to reach Fort Dummer Heights. The Court answers Questions 2 and 3 concluding that the evidence substantiates that the proposed use will not exceed the capability of the site and Fort Dummer Heights, and will not have an undue impact on the Town's transportation infrastructure.

Questions 4, 5, and 6 ask whether the evidence substantiates that the increased traffic along Fort Dummer Heights will not cause unsafe conditions for those using it, and that access to

9

the Property adequately supports the proposed childcare use and use by emergency vehicles. See Brattleboro Regulations, Figure 4-3, Criteria 4, 5, 6. With regard to whether the traffic generated by the proposed childcare use will cause unsafe conditions, the DRB found that the narrowness of Fort Dummer Heights can lead to conflicts between vehicles entering and exiting the Property, but that the low traffic volume allows for reasonable mixed vehicle and pedestrian use. Finding 12(e), (f). As Applicant testified, parents arrive at different times so there are few cars traveling Fort Dummer Heights or accessing the Property at the same time. Recording at 1:17:55. Furthermore, there has never been a problem because parents give other cars enough space to pass or back out and turn around. Id. The parent who testified in the June 17th hearing stated that she does not see traffic as concern because parents are respectful, and she is always traveling under 10mph. Recording at 0:06:05. The video evidence submitted by Appellant supports this as well, showing cars patiently waiting for other cars to back out or slowly passing each other in different directions. Conflicts between cars in the videos Appellant submitted last only matter of seconds, supporting the DRB's finding that the narrowness of Fort Dummer Heights does not create unreasonable delay for traffic access. Finding 12(e). We conclude that the evidence shows that the existing traffic generated by the childcare center is spread out, speeds along the road are low, and parents traveling to the childcare center are respectful of others using the road. We further conclude that the evidence of short delays in cars passing each other or in egress or ingress does not amount to unsafe conditions along Fort Dummer Heights.

The evidence also supports the adequacy of access for the delivery of students, staff, and supplies to the childcare center along with access for emergency vehicles. The Site Plan shows a total of four existing parking spaces that parents can use during drop-off and pick-up, with three inside the driveway area in front of Applicant's residence and the attached childcare space and one across Fort Dummer Heights from the driveway area, though still located on the Property. Applicant additionally proposes to add two new parking spaces for staff up the hill from the childcare center, freeing up the existing spaces in front of the childcare center. Recording at 1:17:50. We affirm the DRB's conclusion that based on this evidence, moving the staff parking away from the front of the childcare center leaves the existing spaces open for easy pick-up and drop-off for parents and gives emergency vehicles sufficient space to enter and exit quickly.

10

Findings 12(e), (f). Questions 4, 5, and 6 are answered in the affirmative concluding that the evidence substantiates that the increased traffic along Fort Dummer Heights will not cause unsafe conditions for those using it, and that access to the Property adequately supports the proposed childcare use and use by emergency vehicles.

Question 8 asks whether the evidence before the DRB substantiates the quality of life or the natural environment in the area. This question intersects with many of the criteria for site plan and conditional use review, including Criteria 14 which requires that the proposed development "will not result in undue adverse impacts beyond the property line that would reduce the quality of life or the quality of the natural environment in the area." Brattleboro Regulations, Figure 4-3. Appellant argues that the existing childcare use generates traffic that has an undue adverse impact on her quality of life because of the noise and dust from cars passing her residence on Fort Dummer Heights and because she frequently has to wait for cars to pass before entering or exiting her driveway. She argues that she cannot use her porch because of the dust from Fort Dummer Heights and must run a fan all day to block out the noise of the passing cars.

While the impacts of the traffic generated by the proposed childcare use may be adverse, they are not unduly adverse. Further, the impacts will be mitigated. The DRB found that the traffic volume along Fort Dummer Heights is low at the rate of 60 to 80 total trips per day. Finding 12(n). These findings are supported by the evidence described above in response to Questions 2 and 3 that parents arrive at different times and do not experience issues with much delay or bottlenecking on Fort Dummer Heights. That Appellant may have to wait a few seconds for cars to pass before entering or exiting her driveway, while inconvenient, does not rise to the level of an undue impact on her quality of life. The DRB also found that paving the right-of-way will mitigate the impacts from the childcare use of the property by reducing the noise and dust that Appellant experiences from passing cars. This finding is supported by Zoning Administrator Brian Bannon's testimony. Recording at 0:14:00. There is little evidence in the record of the June 17th hearing regarding noise. We conclude, however, that the DRB's determination that cars traveling past Appellant's residence for childcare pickups and drop-offs will make less noise on a paved road than a gravel one is reasonable and based in common sense.

11

Appellant does not cite to any specific issues with regard to undue adverse impact on the quality of the natural environment, and only briefs the wetlands issue in reference to Question 7. Applicant proposes few structural changes to the Property and represents in her application that she will preserve the natural landscaping and tree cover, which supports the DRB's finding that the location of the play area buffers the neighboring homes from noise from the childcare center itself because of the surrounding tree cover. The Court answers Question 8 in the affirmative concluding that the proposed childcare project will not result in undue adverse impacts reducing quality of life or the natural environment of the area.

Question 1 asks whether the evidence before the DRB substantiates that the proposed use will not alter the character of the area. The standard for assessing the impact of a conditional use proposal on the character of the area under the Brattleboro Regulations is set by Criteria 2, which requires that the proposed use "will not alter the existing or planned character of the area as defined by the purpose of the applicable zoning district, and the land use goals and policies of the Brattleboro Town Plan." Brattleboro Regulations, Figure 4-3.

The language of Criteria 2 in the Brattleboro Regulations differs from that set out by the enabling statute, 24 V.S.A. § 4414(3). While the Criteria 2 prohibits development or uses that "alter" the "existing or planned character of the area," the enabling statute prohibits those that have an "undue adverse effect" and defines "character" only in terms of the stated purposes for the zoning district and municipal plan without explicitly including consideration of existing uses. 24 V.S.A. § 4414(3)(A)(ii). The Environmental Division interprets the statutory language in § 4414(3) as a "floor" for municipal regulation, explaining:

> [w]hile towns' regulations must, at the very least ensure that conditional uses will not have an undue adverse effect on the character of the area, as defined by the purpose or purposes of the zoning district, the regulations may *also* require that conditional uses not have an undue adverse effect on the character of the area as it actually exists.

Rublee 246 White Birch Lane CU, No. 140-11-15 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Aug. 23, 2016) (Walsh, J.) (internal quotations omitted) (original emphasis).

The Court will consequently follow the definition of character of the area in the Brattleboro Regulations and will look for findings from the DRB on the impact to both the existing and planned character of the area.

To conform to the minimum review required by the enabling statute, however, the Court will consider whether the use has an "undue adverse impact" on the existing or planned character, not merely whether it "alters" the character. As the Vermont Supreme Court explained while summarizing prior case law in In re Group Five Investments CU Permit, because "[a]ny conditional use will have some adverse effect," municipal conditional use regulations should be interpreted in accordance with the enabling statute as prohibiting only "substantial and material adverse effects," noting that the Environmental Division's decision below correctly equated "substantial and material" with "undue" adverse impacts. 2014 VT 14, ¶¶ 12, 15, 195 Vt. 625, overruled on other grounds by In re Confluence Behavioral Health, LLC, 2017 VT 112, 206 Vt. 302.

Regarding the existing character of the area, Fort Dummer Heights is a narrow, dead-end road providing access to a residential development that is adjacent to Interstate 91 to the east. Applicant's residence is the only house on approximately 1.99 acres. Fort Dummer Heights serves one other residence aside from those of the Appellant and Applicant, as well as several undeveloped lots, so the area is low-density and residential as found in Finding 12(b). Fort Dummer Heights intersects with Old Guilford Road which is a Town road running parallel to Interstate 91 in front of Appellant's residence on the corner of Old Guilford Road and Fort Dummer Heights.

The evidence establishes that the proposed childcare use is compatible with the existing residential aesthetics. The childcare center is in a converted garage attached to Applicant's residence so it retains its single-family residential appearance, and the expanded play area is set back from the road and buffered by surrounding trees. Applicant's proposal does not add new structures or change any existing structures on the lot, preserving existing landscaping and tree cover and only adding two on-site parking spots as necessary to improve access to the childcare center. Paving will be limited to the section of Fort Dummer Heights between the intersection

with Old Guilford Road and the Property.  The proposed fence for the play area is intended to blend into the surrounding wooded area.  This evidence supports the DRB's findings that the proposed use will keep the site as residential and natural as possible, minimizing parking and paving, and retaining the area's low density.

Appellant's main concern is with the traffic generated by the childcare use of the Property.  The childcare center will generate a majority of the traffic along Fort Dummer Heights, with the DRB finding that approximately 60 of the daily trips relate to the childcare center.  Finding 12(d).  This calculation is supported by Applicant's testimony confirming that the DRB could multiply the number students by four to estimate the number of trips per day coming from students, and adding that total to testimony that there are two staff members who park on-site and the potential for a delivery during the day.[5]  Recording at 0:15:30, 1:15:15.  The DRB found, as the evidence cited earlier supports, that the volume of traffic on Fort Dummer Heights from the proposed childcare project is low and does not create unreasonable delays or issues with ingress and egress requiring anything beyond safe driving practices.[6]  Paving the section of Fort Dummer Heights in front of Appellant's residence will mitigate her concern with noise and dust generated by cars passing her residence.  The Court concludes, based on the DRB's findings, consistent and supported by the evidence, that the traffic related to the proposed childcare project will not have an undue adverse impact on the existing character of the area.

We conclude, as the DRB also concluded, that the proposed use is compatible with the character of the area in terms of the purpose of the zoning district and the land use goals and policies of the Brattleboro Town Plan.  The Brattleboro Regulations state the following purpose for the Rural Residential District:

> Purpose. The Rural Residential District encompasses land primarily west of Interstate 91 that is rural in character but is relatively close to the developed areas of town and accessible from improved public roads, which has made these areas a suitable and attractive location for low-density residential development. This land is generally not served by municipal water and sewer, and extension of infrastructure into this district is discouraged. The purpose of this district is to provide opportunities for rural housing and

---

[5] Again, 60 one-way trips is conservatively high as that number

[6] The evidence in support of this finding relates to current traffic conditions with a greater number of children attending the childcare facility.

to encourage thoughtful siting of new development in order to protect rural character, farmland, forestland, open space and important natural resources in accordance with the policies of the Brattleboro Town Plan.

Brattleboro Regulations, § 231.A.

The proposed use aligns with the stated purpose for the zoning district. As previously explained, the site will remain low-density and residential as the childcare center is located inside an existing converted garage attached to a single-family residence that will remain a single-family residence. Increasing the number of students to eleven does not involve any new development or changes to existing structures, and preserves existing tree-cover. The proposed use will not require the extension of infrastructure into the district, with the number of students and staff conforming to the capacity of the wastewater system.

The Court additionally concludes that the DRB did not err in finding that the proposal conforms with the Brattleboro Town Plan. In its chapter on land use, the Brattleboro Town Plan lists four goals:

A. Promote development of a future land use pattern that promotes public health and safety against floods, ensures the viability of agricultural and forestry economies, protects natural resources, promotes transportation accessibility, and reinforces a compact development pattern
B. Reduce the impact of flooding and erosion
C. Promote development patterns that include walkable streets; compact, mixed-use development; public spaces; and context-sensitivity to historic design and development
D. Increase and improve public access to waterfront areas

Brattleboro Town Plan at 122.

The proposal supports the goals of compact development patterns and mixed-use development in that it would add a home business use to Applicant's single-family residence. The proposal also complies with Policy 12.7 to "[m]aintain and enhance the quality of life in Brattleboro's residential neighborhoods," which includes the action item to "[s]upport efforts that provide neighborhoods with social amenities, interaction and a sense of community." Brattleboro Town Plan, Policy 12.7. The evidence and the DRB findings establish that the proposed use will result in some impacts related to traffic, but as conflicts between drivers can

15

be maneuvered without unreasonable delay, and mitigation of noise and dust impacts by paving the road, the quality of life will not be unduly impacted. The proposed childcare use fits with the intention of enhancing the quality of life in residential neighborhoods by providing social amenities. Question 1 is answered in the affirmative in that the evidence before the DRB substantiates that the proposed use will not alter the character of the area.

### *Wetlands (Question 7)*

Appellant also opposes the proposed use on the grounds that Fort Dummer Heights is adjacent to a wetland. In Question 7, Appellant asks whether the evidence before the DRB substantiates that the increased use of Fort Dummer Heights will not adversely impact run off and the adjacent wetland. Appellant argues both that the increased use of Fort Dummer Heights in its existing state and alterations to Fort Dummer Heights will adversely affect the wetland, as improvements such as paving will encroach into the wetland.

The wetland is located on the west side of the right-of-way, across from Appellant's driveway, with some vegetation growing between the gravel road and the wetland. Recording at 0:35:42. The Zoning Administrator testified that while expanding the travel lane of Fort Dummer Heights could increase impacts to the wetland, paving it could benefit the wetland by reducing the amount of sediment flowing into the wetland from runoff. Recording at 0:14:23. Additionally, Applicant explained during the June 17th hearing that she does not plan to expand the travel lane(s) of the road, but to have the pavement span eleven feet across with two feet on either side of the road inside the right-of-way. Recording at 0:21:43. Applicant is also willing to add additional plantings along the edge of the road, though the DRB did not make this a condition of approval. Recording at 0:21:12. The DRB consequently did not err in finding that paving the road will mitigate the impacts of the proposed use while still reducing the impact on the wetland, reducing the silt in stormwater runoff and keeping the width of the road small. With no other proposed development, we conclude that these findings satisfy the relevant requirements of Criteria 9, that the development appropriately manage stormwater, minimize runoff and the amount of natural vegetation cleared, and Criteria 14, that the development not have an undue adverse impact on the quality of the natural environment. Finally, the DRB appropriately

16

accounted for the possibility that additional actions could be required for the protection of the wetland by attaching Condition 2 regarding State permitting to its approval. Question 7 is answered in the affirmative concluding that the evidence before the DRB substantiates that the increased use of Fort Dummer Heights will not adversely impact run off and the adjacent wetland.

### Conclusion

For the foregoing reasons, the Court concludes that the DRB's factual findings are supported by substantial evidence in the record below. Furthermore, with one exception, we conclude that the DRB's conclusions of law are supported by its findings of fact. The one exception relates to the DRB's error in its legal analysis that it could calculate the impact of Applicant's proposal for eleven students by adding the number of new trips generated by only the eleventh student. As the DRB's facts relating to traffic trips are supported by the underlying evidence we are not required to remand the matter, but rather reach our independent conclusion on traffic impacts. We therefore **AFFIRM** the DRB's site plan and conditional use approval of Applicant's proposal for eleven children at The Natural Child School. This affirmation is of the DRB's approval and three accompanying conditions, with the correction that the approval is for the operation of a child daycare project of up to eleven children, not twelve. A Judgment Order accompanies this Decision.

We remand this matter to the Town for the ministerial act of issuing any necessary permits for the proposed child daycare project.

Electronically Signed:  12/2/2021 3:05 PM pursuant to V.R.E.F. 9(d).

Thomas G. Walsh, Judge
Superior Court, Environmental Division